IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AMADOU DIALLO, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:24-cv-00421-PX |
| KRISTI NOEM, Secretary,<br>United States Department<br>of Homeland Security, *et al.*, | *<br>*<br>* | |
| Defendants. | * | |
|  | *** | |

## MEMORANDUM OPINION

Pending in this employment discrimination case is the motion to dismiss, or alternatively for summary judgment filed by Secretary of the United States Department of Homeland Security Kristi Noem on behalf of the Department ("DHS").[1] ECF No. 10. Also pending is Plaintiff Amadou Diallo ("Diallo")'s motion for sanctions. ECF No. 15. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, DHS' motion to dismiss is granted in part and denied in part, and Diallo's motion for sanctions is denied.

**I.   Background**

The Court accepts the alleged facts as true and most favorably to Diallo. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Since 2018, Diallo worked for the United

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), former DHS Secretary, Alejandro Mayorkas, is replaced with current Secretary, Kristi Noem. The remaining Defendants—U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, the Fraud Detection and National Security Directorate, Sara C. Brown, Cynthia Burke, Walid M. Rawash, Danyale S. Warren, Jessica L. McAllum, and Susan J. Knafla— are dismissed from this case because Title VII permits claims only against a cabinet-level head of a department or agency. *See* 42 U.S.C. § 2000e–16(a) & (c) (allowing a civil action by an aggrieved federal employee "in which . . . the head of the department, agency, or unit, as appropriate, shall be the defendant."); *see also* 5 U.S.C. § 101; *Gatewood v. Johnson*, No. JKB-16-0854, 2016 WL 6569060, at *4 (D. Md. Nov. 4, 2016) (citing *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986)).

1

States Citizenship & Immigration Services ("USCIS") within DHS.  ECF No. 1 at 5.  Diallo accuses DHS of discriminating against him based on his race, color, gender, religion, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.  *Id.* at 4.  He also contends that DHS has retaliated against him for engaging in activity protected under Title VII.  *Id.*

This lawsuit follows three administrative actions that Diallo brought before DHS' Equal Employment Opportunity ("EEO") Office.  *Id.*  Each will be identified as follows: HS-CIS-00837-2019 (the "2019 EEO Action"), HS-CIS 1890-2022 (the "2022 EEO Action"), and HS-CIS-20167-2023 (the "2023 EEO Action").  The factual and procedural backgrounds for each, as far as the Court can discern, are discussed below.

**A.     The 2019 EEO Action**

On May 31, 2018, Team Lead Matthew Breznai asked Diallo what "side" he was on and whether he was a terrorist or an ally of the United States.  *Id.* ¶ 37.  Diallo reported this conversation to management but never received a response.  *Id.*  Diallo resent a prior email on June 4, 2018, to Branch Chief Bradley Harp, who then met with Diallo and Breznai.  *Id.* ¶ 38.  Breznai apologized for his behavior but denied calling Diallo a terrorist.  *Id.*

A few months later, on November 8, 2018, Cynthia Burke, Diallo's supervisor, said that he would be a good Team Lead given his active participation in meetings.  *Id.* ¶ 1.  Burke told Diallo she would help him get the position if he was interested.  *Id.*  In early December, Diallo was invited to interview for the Team Lead position.  *Id.* ¶ 6.

On December 19, 2018, Diallo appeared before an interview panel of five individuals.  *Id.* ¶ 10.  Burke was a member of the interview panel and suggested that Diallo may have trouble with English such that it may hamper his job performance.  *Id.* ¶ 8.  Burke created type-written notes of the interview, which Diallo finds suspicious given that all other interviewers handwrote

their notes. *Id.* ¶ 9. The next day, supervisor Jessica Esperanza assigned Diallo an inordinate amount of work, prompting Diallo to ask Esperanza to not assign him additional tasks. *Id.* ¶¶ 13–15.

On January 11, 2019, Division Chief Kevin Quinn informed Diallo that the Division did not select Diallo as a Team Lead. ECF No. 1 ¶ 18. Quinn told Diallo that in making this decision, he considered the experience of the applicants and the team, as well as the applicants' on-paper qualifications, interview performance, and presentation skills. *Id.* Diallo responded that he would like to meet to discuss his concerns about the interview. *Id.* ¶ 19.

On January 16, 2019, Diallo and Quinn met. Quinn informed Diallo that even though Diallo had received low preliminary scores because he lacked requisite experience, the team nonetheless wanted to interview him. But according to Quinn, Diallo also received low interview scores, particularly in his interview presentation. *Id.* ¶¶ 21–23.

After the rejection, Diallo also faced a series of what appear to be informal reprimands. ECF No. 1 ¶ 16. One involved his request that Burke approve ten hours of overtime. *Id.* After his request, the Division Chief announced at a staff meeting that employees should not pressure management to approve overtime. *Id.* Thereafter, on January 17, 2019, Quinn notified Diallo's Division that overtime would be suspended; and on March 7, Burke specifically told Diallo that his timesheets included several errors and that he could no longer receive overtime. *Id.* ¶¶ 25 & 33. Another reprimand involved Diallo's queries regarding whether he would be required to attend a training that had been rescheduled at the last minute and allegations he used an improper tone at work. *Id.* ¶¶ 27 & 31. Burke also "screamed" at Diallo for sitting in the wrong cubicle, and he was formally counseled for not sitting in his assigned workspace. *Id.* ¶ 34.

On April 4, 2019, during a mid-cycle review with Burke, Diallo was reprimanded for errors in his work product and for not notifying Burke of his switch in telework days. *Id.* ¶ 35. Burke provided a negative mid-cycle review that Diallo refused to sign. *Id.* ¶ 36. Based on these allegations, Diallo filed a formal charge with the EEOC on May 15, 2019, and received a right to sue letter on November 14, 2023. *Id.* at 4.

**B.     The 2022 EEO Action**

In the 2022 EEO Action, Diallo took issue with an array of discipline he received from his supervisor, Walid Rawash, and his Division more broadly. *Id.* ¶ 43. On November 17, 2021, Rawash told Diallo that he was not well-suited for his position, and Diallo reported this comment to management. *Id.* ¶ 43. Branch Chief Danyale Warren requested that Diallo provide a statement about Rawash's alleged misconduct, but then Warren took no further action. *Id.*

During a subsequent meeting on December 1, 2021, Rawash behaved in an insulting and offensive manner towards Diallo, although the Complaint provides no other details as to exactly what Rawash did or did not do during that meeting. *Id.* ¶¶ 70–72. The next month, Diallo was advised that he should stop including certain members of upper management on emails and should instead email Rawash if he had concerns about his treatment. *Id*. ¶ 67. He also received a written counseling letter for reporting abuse to upper management. *Id.* ¶ 69.

For the remainder of 2022, Diallo and Rawash butted heads. On March 11, 2022, Rawash emailed Diallo in a manner that, in Diallo's view, misstated Diallo's work productivity. *Id.* ¶ 64. Diallo notified upper management of this inaccurate reporting but did not receive a response. *Id*. ¶ 66. Diallo later received a letter of reprimand stating that he needed to listen to his supervisor or his ability to telework would be terminated. *Id.* ¶ 62.

4

In April of 2022, Diallo requested that he be allowed to use a prayer room to accommodate his religious beliefs. *Id. ¶* 75. Rawash let Diallo book a room during prayer times but said that it "is not the responsibility of the supervisor to reserve space on your behalf for private religious observance during your breaks." *Id. ¶* 54. Diallo found this response inappropriate and renewed his request for accommodations. Further, Diallo requested that he be permitted to work ten hours a day, Monday through Thursday, and to take off Friday to attend religious services. *Id. ¶* 60. Management denied this request. *Id. ¶* 59.

During the COVID-19 pandemic, Diallo was required to come into the office despite presenting a medical note that he was immunocompromised. *Id. ¶* 89. Management issued him an Absence Without Official Leave ("AWOL") decision for time he took off in July 2022 when he was ill. *Id. ¶* 84. In mid-to-late 2022 and 2023, Diallo was suspended several times from work for insubordination. *Id. ¶¶* 95 & 96. He also received a poor performance rating during the same period. *Id. ¶* 92. On August 15, 2022, Diallo was counselled for failing to follow instructions. *Id. ¶* 87.

During October and November 2022, Diallo was suspended for improper email behavior, issued a poor performance rating, and referred to the Office of Investigation for alleged misconduct involving the unauthorized disclosure of information. *Id. ¶¶* 91–93. On November 18, 2022, Diallo was denied a grade increase that he expected to receive in December. *Id. ¶* 94. On January 9, 2023, Diallo was issued a proposed suspension of fourteen days. *Id. ¶* 95. On March 7, 2023, Diallo asked to be reassigned to a supervisor other than Rawash, but the request was denied. *Id. ¶* 48. On April 6, 2023, Diallo was suspended for ten days. *Id. ¶* 96.

Around this time, it appears that Diallo emailed the Agency's EEO Office, the USCIS Director, and others about his perceived mistreatment, alleging that he had been the victim of

religious discrimination and reprisal for his prior EEO activity. *Id.* ¶ 49. According to the Complaint, the 2022 EEO Action was "under an administrative judge" at the time that Diallo filed suit. *Id.* ¶ 41. Neither party has provided any other information about the administrative posture of the 2022 Action.

**C.     The 2023 EEO Action**

In this Action, Diallo first complains that the Head of the Fraud Detection and National Security Directorate, Matthew Emrich, did not "acknowledge" Diallo three separate times. *Id.* ¶¶ 99–102. Alongside this "disrespectful communication," Diallo takes issue with his low performance rating, the additional work he had been assigned, and his Performance Improvement Plan. *Id.* ¶¶ 107–08. Evidently, Diallo also blew the whistle on Agency executives who had received multi-million-dollar contracts outside of government upon retirement. *Id.* ¶¶ 103–104. After reporting this alleged misconduct, Diallo received a notice of proposed suspension for emailing work-related content to his private email address, an EEOC attorney, and his own attorney. *Id.* ¶ 106. By November 14, 2023, the Agency began the process of removing Diallo from his position. *Id.* ¶ 111. He was officially removed on February 5, 2024. *Id.* ¶ 117.

As to the procedural posture of the 2023 EEO Action, the Complaint merely avers that Diallo received an "acceptance letter" on February 8, 2024. *Id.* ¶ 119. Diallo also avers that the Action includes "mixed" and "non-mixed" claims, and so the EEOC divided the action into two (HS-CIS-02167-2023 for non-mixed claims; and HS-CIS-00802-2024 for the mixed claims). *Id.* ¶ 119. According to DHS, as of August 7, 2024, the mixed claims are before the Merit Systems Protection Board, ECF No. 10-9, the Agency dismissed the non-mixed claims after Diallo filed this lawsuit, and Diallo has appealed that dismissal to the EEOC Office of Federal Operations. ECF No. 10-10.

Diallo now wraps the above claims into a single suit. For the 2022 and 2023 EEO Actions, DHS singularly argues that the claims must be dismissed for lack of exhaustion. ECF No. 10-1 at 18. As to the 2019 EEO Action, DHS argues that the claims fail as a matter of law. *Id.* at 19. The arguments are each addressed below.

**II.  Standard of Review**

DHS moves to dismiss the claims or alternatively for summary judgment to be granted in its favor. ECF No. 10. When a motion to dismiss is styled in the alternative as a motion for summary judgment, the Court may exercise its discretion under Federal Rule of Civil Procedure Rule 12(d) to treat the motion under either standard. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436 (D. Md. 2011), *aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462 (4th Cir. 2012).

In truth, DHS proceeds under the Rule 12(b)(6) dismissal standard, and only once urges the Court to "enter summary judgment" as to the claims arising from the 2019 EEO Action. ECF No. 10-1 at 27 ("if the Court determines that Diallo has stated a claim for discrimination . . . the Court should enter summary judgment on this claim. . . ."). Because the case is in its infancy and no formal discovery has taken place, the Court confines its analysis to the sufficiency of the Complaint out of an abundance of caution.

When reviewing a complaint for sufficiency under Rule 12(b)(6), the Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the Court need not "credit a complaint's conclusory statements without reference to its factual context," *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009), or "accept as true a

7

legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Because Diallo proceeds pro se, the Court must read his pleadings charitably and let all potentially viable claims reach the merits. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a pro se complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Such documents may also be considered when deciding whether the plaintiff has exhausted his claims. *See Cheng v. U.S. Bureau of Lab. Stat.*, No. CV 21-03282-BAH, 2024 WL 1743409, at *5 (D. Md. Apr. 22, 2024) (considering a Final Agency Decision and an MSPB Initial Decision when ruling on issues related to administrative exhaustion in a Rule 12(b)(6) motion to dismiss).

**III.    Analysis**

**A.     Exhaustion of Administrative Remedies**

For the claims arising from the 2022 and 2023 Actions, DHS solely contends that they must be dismissed for failure to exhaust administrative remedies.  ECF No. 10-1 at 15–16.  While not jurisdictional, administrative exhaustion is a prerequisite for pursuing a Title VII claim in this Court.  *See Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 549 (2019).  Before a federal employee may sue under Title VII, he must first exhaust a statutorily mandated administrative process.  *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022).  Specifically, federal employees must first file a complaint with their respective agency's EEO office.  42 U.S.C. § 2000e-16.  Thereafter, a plaintiff may file suit either "within 90 days of receipt of notice of final agency action," or after "180 days from 'the filing of the initial charge' with the agency, if there has been no final agency action on the complaint."  *Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019) (quoting 42 U.S.C. § 2000e-16); *see* 29 C.F.R. § 1614.407(b).

Lack of exhaustion, however, remains an affirmative defense that the defendant must prove by preponderant evidence.  *See L.N.P. v. Kijakazi*, 64 F.4th 577, 585 (4th Cir. 2023).  Given this, the Court cannot dismiss a claim on exhaustion grounds unless the defendant can show that the necessary facts "clearly appear[ ] on the face of the complaint."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citation omitted).  Thus, it is the "rare circumstance" where the defendant can "show that the plaintiff's potential response to the affirmative defense was foreclosed by the allegations in the complaint."  *Mills v. Inova Health Care Servs.*, No. 23-2318, 2025 WL 40550, at *2 (4th Cir. Jan. 7, 2025) (quoting *L.N.P.*, 64 F.4th at 586 (4th Cir. 2023)) (internal quotations and citations omitted).

DHS has not met that burden here. For the 2022 EEO Action, DHS contends only that the Complaint referenced the matter as "under an administrative judge." ECF No. 1 ¶ 41. But this lawsuit was filed many months ago, and so, the Court cannot infer that Diallo failed to exhaust, especially when the Action will be considered exhausted after 180 days absent a final agency decision. *See* 42 U.S.C. § 2000e–16(c). Thus, the motion must be denied on this basis.

Similarly for the 2023 EEO Action, DHS relies on the Complaint averment that the claim "is being investigated." ECF No. 1 ¶ 97. But for this Action, DHS also submits certain documents which suggest that as of June 2024, certain claims are before the Merit Systems Protection Board, ECF No. 10-9; and the Agency had dismissed the remainder precisely because Diallo filed suit here. ECF No. 10-10. Although Diallo "appealed" that dismissal, the Court has no contemporaneous information by which it can conclude the 2023 EEO Action is still unexhausted. The motion as to this action, too, must be denied.

Remarkably, DHS does not challenge the sufficiency of the claims in the alternative. But as framed, the Complaint makes it nearly impossible to understand what causes of action Diallo brings and the factual bases for each. For example, as to the 2022 EEO Action, Diallo recounts a litany of alleged adverse interactions, but from this, seems to pursue only a denial of religious accommodations. ECF No. 1 ¶ 75. Diallo also does not enumerate any causes of action by "Counts" or a similar vehicle for specifying claims; nor does he cite the statutory violations for each cause of action so that DHS is fairly apprised of the claims that Diallo is currently pursuing. Without this basic structure, DHS is left to box in the dark as to the causes of action against which it must defend.

Accordingly, Diallo must amend the Complaint so that it comports with basic pleading requirements. Federal Rule of Civil Procedure 8(a) requires that the complaint include a short

and plain statement of the claim that shows the plaintiff is entitled to relief such that the defendant is fairly placed on notice of the claim and the "grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(d)(1) commands that complaint allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Likewise, Rule 10(a) requires that the complaint identify each individual that renders the defendant responsible for the wrongdoing. Fed. R. Civ. P. 10(a). Although Diallo proceeds pro se, he is responsible for complying with the Federal Rules of Civil Procedure and this Court's Local Rules.[2]

Diallo is also reminded that the Amended Complaint will replace the original Complaint. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("an amended pleading ordinarily supersedes the original and renders it of no legal effect."). Diallo should include all allegations in the Amended Complaint, broken down by "Counts," to identify each cause of action so that the Amended Complaint stands alone as the sole complaint. The Court warns Diallo that failure to file an Amended Complaint consistent with this directive may result in dismissal of the Complaint without further notice.

The Court lastly turns to the claims arising from the 2019 EEO Action.

**B.     The 2019 EEO Action**

DHS contends that the Court may only consider the claims first brought in the 2019 EEO Action—national-origin discrimination and retaliation. ECF No. 10-1 at 16. Diallo does not address this argument at all. ECF No. 12. Where a complainant alleges a basis for

---

[2] The Federal Rules of Civil Procedure are available online at http://www.uscourts.gov/rules-policies/current-rules-practice-procedure/federal-rules-civil-procedure. The Court's Local Rules are available at https://www.mdd.uscourts.gov/local-rules.

discrimination for the first time in federal court, the claim cannot proceed for failure to exhaust. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002). The scope of the plaintiff's federal causes is circumscribed by the contents of the formal administrative complaint as identified and investigated by the EEOC. *See Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Although the Complaint makes broad reference to discrimination based on "race, color, gender, [and] religion," ECF No. 1 at 4, it appears as if the only claims that proceeded to investigation were national-origin discrimination and harassment, as well as retaliation. ECF Nos. 10-4, 10-5 & 10-6. Diallo has neither contested this proposition nor provided the original charge submitted to the EEOC so that the Court could determine whether Diallo's administrative charge captured any other discrimination theories. *See Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) (citing *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."). Thus, the Court construes the claims as ones challenging national-origin discrimination, harassment, and retaliation. *See Sydnor*, 681 F.3d at 594.

Turning first to national-origin discrimination, DHS argues that the claim fails as a matter of law because no alleged facts make plausible that he had been discriminated against because of his national origin. ECF No. 10-1 at 20. Absent direct evidence of discrimination, the claims are subject to the well-established burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lattinville-Pace v. Intelligent Waves LLC*, No. 22-1144, 2024 WL 1756167, at *1 (4th Cir. Apr. 24, 2024), *cert. denied*, 145 S. Ct. 274 (2024).

Under this framework, the plaintiff must first make a prima facie showing of discrimination. *Id*. If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking adverse action. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reasons are mere pretext for discrimination. *Id.*

When viewing the Complaint facts most favorably to Diallo, nothing suggests that he had been treated adversely on account of his national origin. At best, Diallo points to Burke's comment that his lack of English proficiency may have affected his ability to perform as Team Lead. ECF No. 1 ¶ 8. However, this alone does not give rise to the plausible inference that Burke treated Diallo adversely because he is of Senegalese origin. This is especially so when considering that "language [proficiency] and national origin are not interchangeable." *Napreljac v. John Q. Hammons Hotels, Inc*., 461 F.Supp.2d 981, 1029 (S.D. Iowa 2006), *aff'd*, 505 F.3d 800 (8th Cir.2007); *see Hanoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1048 (8th Cir. 2003) ("criticizing a foreign employee's facility with the English language [does not] constitute[ ] discrimination against a particular race or national origin"). Without more, the national-origin discrimination claim fails.[3]

Turning next to the harassment claim, DHS maintains that no facts make plausible that any claimed harassing conduct was on account of Diallo's national origin. ECF No. 10-1 at 22. To succeed on a Title VII hostile work environment claim, a plaintiff must establish that she experienced (1) unwelcome conduct, (2) on account of her race [or national origin], (3) that was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive

---

[3] The remaining allegations of adverse treatment, ECF No. 1 ¶¶ 26, 32 & 37 (suspending receipt of overtime pay as part of a branch-wide suspension, admonishments for improper tone and correspondence, being called a "terrorist"), do not themselves suffice without some facts to make plausible that Diallo was treated adversely on account of his Senegalese origin.

work environment, and (4) the conduct is imputable to the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001). Harassment requires the Complaint to make plausible that the nature of the adverse conduct was sufficiently severe that it unreasonably interfered with an employee's work performance. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015).

Assuming, without deciding, that the Complaint alleges a sufficiently hostile environment, no facts make plausible that Diallo had been mistreated on account of his national origin. Again, at best, he experienced a singular nasty question about whether he is a "terrorist," ECF No. 1 ¶ 37, and a concern about his English proficiency. But this alone does not transform the work environment into one permeated with hostility on account of his national origin. Accordingly, the claim fails on this basis alone.

Last, DHS argues that the retaliation claim fails because the alleged retaliatory acts had taken place before Diallo engaged in any protected activity. ECF No. 10-1 at 21. For a Title VII retaliation claim to survive dismissal, a plaintiff must make a prima facie showing that he engaged in protected activity; that the employer took adverse action against him; and a causal link exists between the two. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001); *see also Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016). Causation may be inferred when the adverse action follows close in time to the protected activity. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021).

The Complaint, read most favorably to Diallo, avers that his non-selection for team lead on January 11, 2019, was retaliatory. ECF No. 1 ¶ 18. However, his first alleged protected activity did not occur until May 15, 2019, when he filed the 2019 EEO Action. *Id.* at 4. Accordingly, any adverse action that predates his first EEO contact cannot form the basis of a

retaliation claim. *See Short v. Berryhill*, Civ. A. No. ELH-18-2714, 2019 WL 4643806, at *20 (D. Md. Sept. 24, 2019); ECF No. 10-1 at 25.[4]

In sum, the Complaint fails to state a claim for either national origin discrimination or retaliation. But as already discussed, the Complaint suffers from basic pleading deficiencies that make it difficult to discern what causes of action Diallo intends to bring and the factual support for each. Although the Court remains skeptical about the sufficiency of Diallo's claims, the Court recognizes that the case is in its infancy and Diallo proceeds pro se, so the Court will afford him one opportunity to cure any deficiencies. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (explaining that a district court should not dismiss a complaint with prejudice under Fed. R. Civ. P. 12(b)(6) without first giving the plaintiff leave to amend). Accordingly, within **twenty-eight days** from the date of this Opinion and accompanying Order, Diallo shall file an Amended Complaint that will replace the original Complaint. Failure to amend will result in dismissal of the claims without prejudice and without further warning.

### IV.   Diallo's Sanctions Motion

Diallo asks this Court to impose sanctions because DHS represented to the Court that he had consented to an extension of a filing deadline when he had not. ECF No. 15. DHS responds that the motion must be denied because Diallo failed to first serve the motion on DHS, as is required under Rule 11 of the Federal Rules of Civil Procedure. ECF No. 16. DHS is correct.

---

[4] DHS also argues that to the extent Diallo contends a June 2019 Letter of Reprimand is retaliatory, no facts make plausible that the author of the letter knew of Diallo's protected conduct. ECF No. 10-1 at 25; *see Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) ("[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Likewise, as to the negative performance review that Diallo received on October 22, 2019, no facts make plausible any connection between the protected activity from five months prior and the review itself. ECF No. 10-1 at 25–26; *see Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir 2021) (explaining that a lengthy lapse in time between the protected activity and the adverse employment action negates any inference of causation). Diallo does not address these arguments. ECF No. 12. Thus, the Court concludes that to the extent the Complaint avers retaliation based on these subsequent events, the claim also fails on this basis.

"The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court." *Brickwood Contractors, Inc. v. Datanet Eng'r, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004); *see* Fed. R. Civ. P. 11(c)(2). Diallo failed to serve the motion as required, and so it must be denied on that ground alone.

Nor does the Court find the motion has any merit. A mere misunderstanding about Diallo's consent or lack thereof regarding a motion for extension of time will not support sanctions. Thus, even if Diallo had perfected service of the motion, it would nonetheless be denied.

## V.     Conclusion

Based on the foregoing, DHS' motion is granted in part and denied in part as to lack of exhaustion. Within twenty-eight days from the date of this Opinion and Order, Diallo must file an Amended Complaint to cure the pleading deficiencies, or the original Complaint will be dismissed. Diallo's motion for sanction is denied. A separate Order follows.

| 3/5/2025 | /s/ |
|---|---|
| Date | Paula Xinis |
|  | United States District Judge |